| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>CERTAIN CELL TOWER DATA IN THE POSSESSION OF VERIZON, SPRINT, T-MOBILE, AND AT&T. | FILED UNDER SEAL  19-0904 ADC<br><br>CASE NO.  19-0905 ADC<br><br>*Related Case:* JMC-19-0559 |

FILED ___ ENTERED
LOGGED ___ RECEIVED

APR 02 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANTS

I, Special Agent Brendan Plasha of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being duly sworn, state and depose the following:

### PURPOSE OF THE AFFIDAVIT

Michael Arnold, Stewart Williams, and Kelvin McFadden are currently targets of a federal investigation into a series of robberies. I make this affidavit in support of an application for search warrants to search and seize evidence, fruits, and instrumentalities related to violations of 18 U.S.C. §1951(a)) (Affecting Interstate Commerce by Robbery). *See* 18 U.S.C. § 2703; Federal Rule of Criminal Procedure 41. The affidavit seeks to procure search warrants for historical cell site data in the possession of four telephone service providers.

On February 12, 2019, the Honorable Judge Mark Coulson authorized a series of search warrants for this investigation, relying on much of the same probable cause that is contained within this affidavit, including search warrants for historical cell site data from telephone service providers (Verizon, AT&T, Sprint, and T-Mobile) for times and dates that correspond with 17 robberies. JMC-19-0559. This affidavit is in support of a search warrant for historical cell site data in the possession of Verizon, Sprint, and T-Mobile for a time and date that corresponds with

1

an 18th robbery, which took place on August 5, 2018 at John's Liquor & General Store at 812 Duvall Highway, Pasadena, MD 21122.

Additionally, AT&T refused to honor the previous search warrant addressed to them for technical reasons, arguing that their name appeared only in some portions of the affidavit and an order addressed to them, and not in other portions of the search warrant package. Despite repeated phone calls and attempts to resolve the issue, AT&T was not responsive and did not follow up with a phone call from an attorney or supervisor, as AT&T represented that it would. Accordingly, for AT&T, this affidavit is in support of a search warrant for historical cell site data in AT&T's possession related to the times and dates of all 18 robberies, as described below.

For the historical cell site data, the warrant would require the telephone service providers ("the Service Providers") listed below to disclose certain records and other information pertaining to the cell phone towers described in Attachments A and B.

- Verizon Wireless
- Sprint
- AT&T
- T-Mobile

The records and other information to be produced and searched are described in Attachments A and B.

## AGENT BACKGROUND

1. I am a Special Agent with ATF and have been since 2015. I am currently assigned to the ATF Baltimore Field Division, Baltimore Field Office. I attended the United States Department of Homeland Security's Criminal Investigator Training Program and ATF's Special Agent Basic Training, both located in Glynco, Georgia, for a combined period of twenty-six weeks. I have received extensive training, both formal and on-the-job, in the provisions of the

Federal Firearms Laws and Federal Narcotics Laws administered under Title 18, Title 21, and Title 26 of the United States Code. As an ATF agent, I have conducted and participated in numerous investigations concerning violations of federal firearm laws, violations of federal controlled substance laws, and the commission of violent crimes. I have received specialized training regarding, and have personally participated in, various types of investigative activities, including: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants, and other individuals who have knowledge concerning violations of federal firearms and controlled substance laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap and trace devices; (g) the court-authorized interception of both wire and electronic communications (i.e., Title III wiretaps); and (h) the handling, maintenance, and examination of evidence, including wireless telephones and computers.

2. As a Special Agent with ATF, I am authorized to investigate violations of laws of the United States and as a law enforcement officer with the authority to make arrests and execute warrants issued under the authority of the United States.

3. The information contained in this affidavit comes from my personal observations; my training and experience; and information obtained from other agents, police officers and detectives, witnesses, and reports. Since this affidavit is being submitted for the limited purpose of establishing probable cause for securing the search warrants, I have not included every fact known to me concerning the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of 18 U.S.C. § 1951(a) (Robbery Affecting Commerce) are located within the historical cell site data.

4. Based on my training, knowledge, and experience, I also know that the location of a cell phone at a particular time (based on cell site records and location information) may constitute evidence of a crime. Such location information allows investigators to determine, for example, whether a particular telephone was in the vicinity of a robbery location such as a bank or convenience store around the time of its robbery. Indeed, here, such cell cite records and location information will, among other things, help the United States to (a) investigate possible connections among phone numbers associated with Arnold, Williams, and McFadden and the telephones of other potential co-conspirators; and (b) identify some of the past movements of the user or users of the seized telephones within broad (multi-square-mile) geographic regions to determine whether they were present in the areas of other robberies during 2018 that shared a similar *modus operandi* to those of the robberies discussed below. This is particularly so given that individuals who participate in collective criminal activity, including armed robberies, frequently have cell phones with them when they commit their crimes and frequently communicate with one another by cell phone, by social media, and by use of the Internet, before and after those crimes.

## CELL TOWERS

1. Many cellular service providers maintain antenna towers ("cell towers") that serve specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. These cell towers allow the wireless devices to transmit or receive communications, such as phone calls, text messages, and other data. The tower closest to a wireless device does not necessarily serve every call made to or from that device.

2. In addition to a unique telephone number, each cell phone is identified by one or more unique identifiers. Depending on the cellular network and the device, the unique identifiers

for a cell phone could include an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").

3.  Cellular service providers routinely maintain historical cell-tower log information, including records identifying the wireless telephone calls and communications that used a particular tower. For each communication, these records may include the telephone call number and unique identifiers for the wireless device in the vicinity of the tower that made or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the "sectors" (i.e., the faces of the towers) that received a radio signal from the locally served device; and the type of communication transmitted through the tower (such as phone call or text message).

## PROBABLE CAUSE

1.  Between May 25, 2018 and September 1, 2018, there were a total of 18 robberies that occurred in Baltimore City, Baltimore County, and Anne Arundel County that share common characteristics and are linked together by various pieces of evidence. The robberies occurred in geographic and temporal clusters. Additionally, groupings of these robberies appear to have involved similar looking weapons and clothing. There is also forensic evidence, in the form of fingerprints, that link Williams and McFadden to several robberies. Arnold, Williams, and McFadden each made incriminating post-*Miranda* statements. Finally, there is surveillance

5

footage of many of these robberies.

2. Most of these robberies involved two or three black males as suspects. Three of the robberies, including the robbery on August 5, 2018 at John's Liquor & General Store at 812 Duvall Highway, Pasadena, MD 21122, involved a black female suspect with a matching description and general characteristics. In addition, a number of the robberies included a potential getaway driver.

3. The below chart lists the entire series of robberies, their locations, and the approximate times at which they occurred.

|    | Date | Business Name | Location |
|----|------|---------------|----------|
| 1  | 5/25/2018  9:33pm | Conrad's Crabs and Seafood Market | 1720 E. Joppa Rd, Parkville, MD 21234 |
| 2  | 6/10/2018  8:23pm | Pappas Liquor Store | 1725 Taylor Ave, Parkville, MD 21234 |
| 3  | 6/20/2018  9:04pm | Smoothie King | 1830 York Rd, Lutherville-Timonium, MD 21093 |
| 4  | 6/20/2018  9:17pm | Padonia Liquors | 51 E. Padonia Rd, Lutherville-Timonium, MD 21093 |
| 5  | 6/20/2018  10:10pm | Liquor Mart | 833 Taylor Ave, Towson, MD 21286 |
| 6  | 7/10/2018  11:00pm | Group of Individual Victims | 1700 Yakona Rd, Baltimore City, MD 21234 |
| 7  | 7/11/2018  9:55pm | Individual Victim | 8625 Walther Blvd, Baltimore City, MD 21236 |
| 8  | 7/11/2018  9:57pm | Walther Liquors | 8625 Walther Blvd, Baltimore City, MD 21236 |
| 9  | 7/18/2018  11:07pm | Harford Beverage | 7732 Harford Rd, Parkville, MD 21234 |
| 10 | 7/20/2018  6:14pm | C-Mart | 8039 Fort Smallwood, Riviera Beach, MD 21226 |
| 11 | 7/22/2018  1:31am | Wawa (attempted) | 8300 Veterans Highway, Millersville, MD 21108 |

6

| 12 | 7/26/2018 5:50pm | 8 Days A Week Convenience Mart | 1700 Taylor Ave, Parkville, MD 21234 |
| --- | --- | --- | --- |
| 13 | 8/05/2018 9:15pm | John's Liquor & General Store | 812 Duvall Highway, Pasadena, MD 21122 |
| 14 | 8/18/2018 9:50pm | Quick Stop Food Mart | 3301 E Joppa Rd, Parkville, MD 21234 |
| 15 | 8/21/2018 9:50pm | GameStop | 3611 Washington Blvd, Halethorpe, MD 21227 |
| 16 | 8/25/2018 10:54pm | GameStop | 6901 Security Blvd, Baltimore City, MD 21207 |
| 17 | 8/28/2018 10:50pm | GameStop | 1004 Taylor Ave, Towson, MD 21286 |
| 18 | 9/01/2018 10:35pm | GameStop | 6370 York Rd, Baltimore, MD 21212 |

4.     On June 22, 2018, Michael Arnold was arrested in Anne Arundel County while attempting to rob a Wawa . After being arrested and having his *Miranda* rights explained to him, Arnold admitted to attempting to rob the Wawa. In his own words, Arnold said something like, "I was in the process of robbing it." Arnold also made statements incriminating himself for the June 20, 2018 robbery of the C-Mart. For example, when an investigator showed Arnold a picture of a person wearing a hat (believed to be Arnold) who committed the C-Mart robbery, and asked Arnold if the hat was his, Arnold replied that it was not his hat but that he put it on because it was inside of a pouch. In addition to other incriminating statements he made during the interview, Arnold tacitly acknowledged that he had committed the C-Mart robbery. Arnold, however, was reluctant to say who he committed robberies with and would not tell investigators the identity of a co-conspirator whose image was captured by surveillance cameras. He explained that he was fearful for the safety of his family and that there was an ongoing violent conflict involving two separate groups happening near where he and his family members lived. Arnold did say, however, that there were "normally three" people involved in the robberies.

5. After Arnold's arrest, based on Arnold's physical appearance and other evidence, investigators identified multiple robberies of convenience and liquor stores that they believed Arnold and other co-conspirators were responsible for or involved with.

6. Arnold has been charged in Anne Arundel County with the C-Mart robbery, (7/20/2018) and the Wawa attempted robbery (7/22/2018).

7. On September 1, 2018, Stewart Williams and Kelvin McFadden were arrested in Baltimore City after leading police on a high speed chase following their robbery of a GameStop. Police captured footage of Williams and McFadden bailing out of the car and entering the residence at 922 Stricker Street where they were eventually apprehended. Police obtained a search warrant for the car, which they also learned was registered to McFadden.

8. After the arrest of Williams and McFadden, based on their physical appearance and other evidence, investigators identified multiple robberies of convenience stores and liquor stores that they believe Williams and McFadden and certain co-conspirators were responsible for or involved with.

9. Following their arrests, Williams and McFadden were both interviewed after having their *Miranda* rights explained. Williams made incriminating statements implicating himself in the robberies of the four GameStops (8/21/2018; 8/25/2018; 8/28/2018; 9/01/2018). When confronted with incriminating evidence from the GameStop robbery that occurred on 9/01/2018, Williams stated that the game systems were all still in the car. Williams also said that the gun used during the robbery was fake and said that he had no intentions of hurting anybody. When asked about the previous GameStop robberies, Williams stated that he had no interest in seeing pictures from the other robberies and admitted that the game systems were sold on the street, but said that he was not involved with selling the systems. Williams went on to state that

"the risk was not worth the reward."

10. After having his *Miranda* rights explained, McFadden also made incriminating statements implicating himself in the robberies of the four GameStops. When confronted with incriminating evidence from the GameStop robbery that occurred on 9/01/2018, McFadden said that he was not the one with the gun and that he wouldn't have hurt anyone. McFadden stated that he told the employees that he wasn't going to hurt them. McFadden also said that the car used to flee the scene and lead police on a high speed chase was his. When asked about the previous GameStop robberies, McFadden admitted that he sold the game systems.

11. Additionally, investigators were able to determine that one of the game consoles stolen from the 08/28/2018 GameStop robbery was sold to a pawn shop by Kaela McFadden, Kelvin McFadden's sister.

12. Williams and McFadden have since been charged in Baltimore County with approximately 41 counts each for their part in the robberies of the four Game Stops (8/21/2018; 8/25/2018; 8/28/2018; and 9/1/2018), Walther Liquors (7/11/2018), and Quick Stop (8/18/2018).

13. Investigators recovered a cell phone from Arnold's person after he was arrested for the attempted robbery of Wawa on 7/22/2018. Additionally, two cell phones were recovered during a search warrant execution of McFadden's car after Williams and McFadden were arrested for the robbery of the GameStop on 9/1/2018.

14. Investigators confirmed that the cell phone recovered from Arnold, was in fact used by Arnold and belonged to him and was associated with 410-585-7592 by executing a search warrant on that phone. Investigators were able to open the phone and determine that it was both used by Arnold and associated with 410-585-7592.

15. Relying on information I obtained from another investigation, I was able to determine that the phone number 443-355-1097 was associated with Williams. As part of that other investigation, I listened to a jail call that took place on February 4, 2018. During that call, one of the parties provided the telephone number 443-355-1097 as a number for "Burger." Based on information provided to me by several confidential sources, I know that "Burger" is a nickname for Williams. Additonally, on May 19, 2018, Richard McCardell, an associate of Williams, was shot. McCardell's phone was seized by law enforcement, who obtained a search warrant for the phone. In the extraction report executed pursuant to the search warrant, there are text messages and phone calls between McCardell and 443-355-1097, which McCardell named as "Burga" in his phone.

16. During a query of law enforcement databases on February 7, 2019, I learned that on August 31, 2018 a caller placed a 911 call to report an auto accident. The caller used telephone number 443-890-7949 and identified himself as Kelvin McFadden. This call was placed one day prior to McFadden's arrest.

17. Historical cell site data will permit federal investigators to determine whether any phones associated with the telephone numbers linked to Arnold, Williams, and McFadden as described above, or other phone numbers known to investigators, were used in certain ways in the geographical area of the robberies at the time of the robberies.

18. In addition to the above, a general modus operandi, and the temporal and geographic clusters within which the robberies took place, there are additional, notable facts that link together groups of the robberies.

19. After being charged with the four GameStop robberies on 9/1/2018, Williams's fingerprints were also found at the scene of the Walther Liquors robbery that occurred on

7/11/2018.

20.     McFadden's fingerprints were found both at the scene of the GameStop robbery that occurred on 9/1/2018 and also at the scene of the Quick Stop robbery that occurred on 8/18/2018.

21.     Based on a review of surveillance footage and witness descriptions, investigators were able to determine that similar items and clothing were present across multiple robberies.

   a. An outfit including a blue and white "Dallas" baseball hat, a red shirt, and a blue bag: the Harford Beverage robbery (7/18/2018), the C-Mart robbery (7/20/2018), and the Wawa attempted robbery (7/22/2018).

   b. Black and white "Houston Rockets" baseball hat: Harford Beverage robbery (7/18/2018), the C-Mart robbery (7/20/2018), the Wawa attempted robbery (7/22/2018), and the 8 Days a Week robbery (7/26/2018).

   c. Gray or beige "Spurs" baseball hat: three GameStop robberies (8/21/2018; 8/25/2018; and 9/01/2018).

   d. Black and orange "Orioles" baseball hat: the Quick Stop Food Mart (8/18/2018) and the first GameStop robbery (8/21/2018).

   e. Blue "Dallas Cowboys Star" baseball hat: two GameStop robberies (8/28/2018 and 9/01/2018).

22.     One video recovered from the files of Arnold's cell phone depicts Arnold riding in the passenger's seat of a vehicle while it is driving on a highway. Music is playing in the background, and at times during the video, you can see another person driving the vehicle. I recognize the driver to be Stewart Williams. Williams is wearing a black and white "Houston

Rockets" hat that matches the one worn during several robberies (7/18/2018; 7/20/2018; 7/22/2018; 7/26/2018). The video file is saved as "0718182035-01.3gp".

23. Enterprise Rental company confirmed that Stewart Williams rented a 2018 "gray/dk" Chevrolet Silverado Truck from 7/12/2018 till 7/30/2018. That car was driven about 3,800 miles during the course of the rental. The video described in paragraph 23 depicts the interior of the vehicle, parts of the front portion of the exterior, and a portion of the rear exterior of the vehicle. Based on the vehicle's color, size, hood features, and truck bed, the vehicle is consistent with a 2018 Chevrolet Silverado.

24. The robbery that took place on 8/05/2018 at John's Liquor and General Store in Pasadena, Maryland was perpetrated by at least two individuals: one black male and one black female who entered the store wielding what appeared to be handguns, pointed those handguns at two employees behind the counter, and robbed money and cigarettes from the store. Security camera footage captured the robbery and depicts a black female with a similar appearance to the female who perpetrated the 7/26/2018 robbery at the 8 Days a Week Convenience Mart and the 8/18/2018 robbery at the Quick Stop Food Mart.

## CONCLUSION

1. Based on the above, I respectfully submit that there is probable cause to believe that Williams, McFadden, and Arnold have violated Title 18 U.S.C. § 1951(a) (Affecting Interstate Commerce by Robbery), and that there is probable cause to believe that evidence, fruits, and instrumentalities of these crimes will be found in the historical cell site data in the custody of the Service Providers, AT&T, Sprint, Verizon, and T-Mobile.

2. I respectfully request that the Court issue the proposed search warrants, pursuant to 18 U.S.C. § 2703 and Federal Rule of Criminal Procedure 41.

3.  I further request that the Court direct AT&T, T-Mobile, Sprint, and Verizon to disclose to the government any information described in Attachments A and B that is within their possession, custody, or control.

4.  I further request that this Court SEAL this affidavit, the search warrant applications, the search warrants, and any orders it issues related to this search warrant package.

5.  Reasonable cause exists to permit the execution of these requested warrants at any time in the day or night because:

    a. None of the warrants involve entry on to physical premises.

    b. The warrant permitting the collection and search of historical cell site data will be served on AT&T, T-Mobile, Sprint, and Verizon who will then compile the Target Information at a time convenient to them.

    c. The warrants for the cell phones involve the search of devices already in the custody and/or control of federal and state law enforcement.

_____
Special Agent Brendan Plasha
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

Subscribed to and sworn before me this _15th_ day of _March_, 2019

_____
THE HONORABLE A. DAVID COPPERTHITE
UNITED STATES MAGISTRATE JUDGE

14

# ATTACHMENT A

## I. The Cell Towers

This warrant applies to certain records and information associated with the following cellular telephone towers ("Cell Towers") during a particular timeframe between May 25, 2018 and September 1, 2018. Specifically, the warrant requires **AT&T Inc., and any and all related corporate entities who possess, control, or have access to the records,** to produce all transactional and subscriber records pertaining to cellular telephone calls and direct connect information, received by or transmitted from cellular telephone towers during the below times and at the below locations:

| Date | Time | Cell Towers |
|---|---|---|
| 5/25/2018 | 7:30pm – 11:30pm EST | Cell Towers near 1720 E. Joppa Rd, Parkville, MD 21234 |
| 6/10/2018 | 6:30pm – 10:30pm EST | Cell Towers near 1725 Taylor Ave, Parkville, MD 21234 |
| 6/20/2018 | 7:00pm – 11:00pm EST | Cell Towers near 1830 York Rd, Lutherville-Timonium, MD 21093 |
| 6/20/2018 | 7:00pm – 11:00pm EST | Cell Towers near 51 E. Padonia Rd, Lutherville-Timonium, MD 21093 |
| 6/20/2018 | 8:00pm – 11:59pm EST | Cell Towers near 833 Taylor Ave, Towson, MD 21286 |
| 7/10/2018 | 9:00pm – 11:59pm EST | Cell Towers near 1700 Yakona Rd, Baltimore City, MD 21234 |
| 7/11/2018 | 8:00pm – 11:59pm EST | Cell Towers near 8625 Walther Blvd, Baltimore City, MD 21236 |
| 7/11/2018 | 8:00pm – 11:59pm EST | Cell Towers near 8625 Walther Blvd, Baltimore City, MD 21236 |
| 7/18/2018 | 9:00pm – 11:59pm EST | Cell Towers near 7732 Harford Rd, Parkville, MD 21234 |
| 7/20/2018 | 4:00pm – 8:00pm EST | Cell Towers near 8039 Fort Smallwood, Riviera Beach, MD 21226 |

| | | |
|---|---|---|
| 7/22/2018 | 12:01am – 3:30am EST | Cell Towers near 8300 Veterans Highway, Millersville, MD 21108 |
| 7/26/2018 | 4:00pm – 8:00pm EST | Cell Towers near 1700 Taylor Ave, Parkville, MD 21234 |
| 8/05/2018 | 7:30pm – 1:00am EST | Cell Towers near 812 Duvall Highway, Pasadena, MD 21122 |
| 8/18/2018 | 8:00pm – 11:59pm EST | Cell Towers near 3301 E Joppa Rd, Parkville, MD 21234 |
| 8/21/2018 | 8:00pm – 11:59pm EST | Cell Towers near 3611 Washington Blvd, Halethorpe, MD 21227 |
| 8/25/2018 | 9:00pm – 11:59pm EST | Cell Towers near 6901 Security Blvd, Baltimore City, MD 21207 |
| 8/28/2018 | 9:00pm – 11:59pm EST | Cell Towers near 1004 Taylor Ave, Towson, MD 21286 |
| 9/01/2018 | 9:00pm – 11:59pm EST | Cell Towers near 6370 York Rd, Baltimore, MD 21212 |

## II.   Records and Other Information to Be Disclosed

For each cell tower described in Part I of this Attachment, AT&T is required to disclose to the United States all records and other information (not including the contents of communications) about all communications made using the cell tower during the corresponding timeframe(s) listed in Part I, including the records that identify:

A.   the telephone call number and unique identifiers for each wireless device in the vicinity of the tower ("the locally served wireless device") that registered with the tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network

Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

B. the source and destination telephone numbers associated with each communication (including the number of the locally served wireless device and the number of the telephone that called, or was called by, the locally served wireless device);

C. the date, time, and duration of each communication;

D. the "sectors" (i.e., the faces of the towers) that received a radio signal from each locally served wireless device; and

E. the type of communication transmitted through the tower (such as phone call or text message).

These records should include records about communications that were initiated before or terminated after the specified time period, as long as part of the communication occurred during the relevant time period identified in Part I.

## ATTACHMENT B

**I.    The Cell Towers**

This warrant applies to certain records and information associated with the following cellular telephone towers ("Cell Towers") during a particular timeframe between May 25, 2018 and September 1, 2018. Specifically, the warrant requires **Verizon, T-Mobile, and Sprint** to produce all transactional and subscriber records pertaining to cellular telephone calls and direct connect information, received by or transmitted from cellular telephone towers during the below time and at the below location:

| Date | Time | Cell Towers |
| --- | --- | --- |
| 8/05/2018 | 7:30pm – 1:00am EST | Cell Towers near 812 Duvall Highway, Pasadena, MD 21122 |

**II.    Records and Other Information to Be Disclosed**

For each cell tower described in Parts I of this Attachment, Verizon, T-Mobile, and Sprint are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made using the cell tower during the corresponding timeframe(s) listed in Part I, including the records that identify:

   A.    the telephone call number and unique identifiers for each wireless device in the vicinity of the tower ("the locally served wireless device") that registered with the tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

B.      the source and destination telephone numbers associated with each communication (including the number of the locally served wireless device and the number of the telephone that called, or was called by, the locally served wireless device);

C.      the date, time, and duration of each communication;

D.      the "sectors" (i.e., the faces of the towers) that received a radio signal from each locally served wireless device; and

E.      the type of communication transmitted through the tower (such as phone call or text message).

These records should include records about communications that were initiated before or terminated after the specified time period, as long as part of the communication occurred during the relevant time period identified in Part I.